1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    James S. Miller,                          No. CV-15-0030-TUC-BGM

10                     Plaintiff,

11                                              **ORDER**
     v.
12

13   Carolyn W. Colvin,
     Acting Commissioner of Social Security,
14

15                     Defendant.

16

17        Currently pending before the Court is Plaintiff's Brief—Social Security ("Opening

18   Brief") (Doc. 15).   Defendant filed her Brief ("Response") (Doc. 16), and Plaintiff filed

19   his Plaintiff's Reply Brief—Social Security ("Reply") (Doc. 17).   Plaintiff brings this

20
     cause of action for review of the final decision of the Commissioner for Social Security
21

22   pursuant to 42 U.S.C. § 405(g).   The United States Magistrate Judge has received the

23   written consent of both parties, and presides over this case pursuant to 28 U.S.C. § 636(c)

24
     and Rule 73, Federal Rules of Civil Procedure.
25

26   . . .

27   . . .

28
     . . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    BACKGROUND

### A.    *Procedural History*

On March 23, 2012, Plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB") alleging disability as of December 31, 2010 due to degenerative arthritis and type 2 diabetes mellitus. *See* Administrative Record ("AR") at 19, 21, 33, 35, 39–43, 47–49, 52, 55, 62, 122, 129, 141, 155, 172, 180. Plaintiff's date last insured is June 30, 2016. *Id.* at 21, 40, 48, 141, 170, 178. The Social Security Administration ("SSA") denied this application on July 2, 2012. *Id.* at 19, 39–46, 55–57. On July 17, 2012, Plaintiff filed a request for reconsideration, and on November 29, 2012, SSA denied Plaintiff's application upon reconsideration. *Id.* at 47–54, 58, 62–64. On December 17, 2012, Plaintiff filed his request for hearing. *Id.* at 19, 65–66. On June 24, 2013, a hearing was held before Administrative Law Judge ("ALJ") Peter J. Baum. AR at 19, 28–38. On July 22, 2013, the ALJ issued an unfavorable decision. *Id.* at 16–24. On August 29, 2013, Plaintiff requested review of the ALJ's decision by the Appeals Council, and on November 26, 2014, review was denied. *Id.* at 1–3, 13. On January 22, 2015, Plaintiff filed this cause of action. Compl. (Doc. 1).

### B.    *Factual History*

Plaintiff was sixty-two (62) years old at the time of the administrative hearing and sixty (60) at the time of the alleged onset of his disability. AR at 31, 39–40, 47–48, 122, 141, 170, 178. Plaintiff obtained a high school diploma. *Id.* at 31, 39, 47, 156. Prior to his alleged disability, Plaintiff worked in the copper mining industry, most recently as a maintenance superintendent. *Id.* at 32, 132–34, 156, 164–69, 186–88. Since that time he

1   has worked briefly at Lowe's Home Improvement.  *Id.* at 33–34, 140, 148, 186, 188.

2
3      On June 11, 2012, Plaintiff filled out an Exertional Daily Activities Questionnaire,

4   indicating that on an average day he "walk[s] around for approx: 30 min[utes.]"  *Id.* at

5   161.  Plaintiff reported that "as pain gets worse steps shorten and take more rest stops use

6   [A]dvil for pain no more than 2-200 mg tabs a day."  AR at 161.  Plaintiff further

7
8   reported "[b]roncides night sweats use of inhailer [sic] 3-x a day[,] still have shortness of

9   breath."  *Id.*  Plaintiff indicated that he grocery shops, as well as household chores

10  including "vacuum[ing], dust[ing], dishes, clean[ing] toilet and showers[,] mop[ping]

11
12  floors, clean[ing] appliances (stove, ref[rigerator], dish washer)."  *Id.* at 162.  Plaintiff

13  reported that he must "quit after each chore to rest."  *Id.*  Plaintiff further reported being

14  able to drive a car.  *Id.*  Plaintiff also indicated that he cleans the yard, provides for two

15  (2) dogs, waters the garden, and mows the grass.  AR at 162.  Although he did these
16
17  chores prior to becoming disabled, Plaintiff states that now "it takes a lot longer, if not

18  the next day."  *Id.*  Plaintiff reports resting for two (2) hours "halfway through the day."

19  *Id.*  Plaintiff lists several medications and indicates that he also had stents placed in his
20
21  coronary arteries, has diabetes, pain in his knees and ankles, and requires the use of an

22  inhaler. *Id.* at 163.

23      On appeal, Plaintiff completed a Disability Report – Appeal (Form SSA-3441),
24
25  indicating that he has "arthritis in both ankles and Neuritis in both feet."  *Id.* at 172.

26  Plaintiff reported that "the degenerative arth[r]itis has gotten worse in both . . . hips and

27  back."  AR at 172.  Additionally, Plaintiff stated that the "condition with [his] hips and

28  back and feet has hindered the activities with [his] grandkids[,] [and] the pain in [his]

1
2
3

hips and back have gotten worse and [his] feet has slowed [him] down from being active, walks and jogging[.]" *Id*. at 176.

### 1. Plaintiff's Testimony

4
5
6
7
8
9
10
11
12
13
14

At the administrative hearing, Plaintiff testified that he has a high school diploma. AR at 31.  Plaintiff further testified that he worked in the copper mining industry as a maintenance superintendent until he retired in December 2010.  *Id.* at 32.  Plaintiff was a working superintendent, supervising sixty-five (65) people.  *Id.* at 33.  Plaintiff also testified that his legs and feet gave him trouble, and he was on his feet most, if not all of his shift, carrying pipes and other equipment.  *Id.*  After retirement, Plaintiff worked at Lowe's for a short period; however, his feet were too painful standing on the concrete floor for an entire shift, so he resigned.  *Id.* at 33–34.

15
16
17
18
19
20
21
22

Plaintiff confirmed that he is receiving some retirement income.  AR at 34. Plaintiff also confirmed that if he tried to return to his former mining employment, he would be unable to perform the job due to having to be on his feet most of the day.  *Id.* at 34–35.   Plaintiff testified that he was diagnosed with arthritis in his thumb joint, including two nodules on the tendon approximately three (3) weeks prior to the hearing. *Id.* at 35.

### 2. Plaintiff's Medical Records

23
24
25
26
27
28

On December 10, 2009, Plaintiff saw Imran Ata, M.D. at Pima Health for a follow-up regarding his "P[ercutaneous] T[ransluminal] C[oronary] A[ngioplasty] of osteal disease of P[atent] D[uctus] A[rteriosus] and stent to mid R[ight] C[oronary] A[rtery] eccentric plaque last month."  AR at 381–83.  Plaintiff's physical examination

was unremarkable. *Id.* at 381. On April 8, 2010, Plaintiff followed-up with Dr. Ata for his Coronary Artery Disease and Hyperlipidemia. *Id.* at 379–80, 393–94. Plaintiff reported "[d]oing very well" and that he had been taking Toprol XL. *Id.* at 379, 393. Plaintiff's physical examination was unremarkable. *Id.* at 380, 394. Dr. Ata continued Plaintiff's current medical therapy, but decreased his Aspirin dosage to 81 mg daily. AR at 380, 394. On July 8, 2010, Plaintiff followed-up with Dr. Ata. *Id.* at 377–78, 391–92. Plaintiff reported "feeling fine." *Id.* at 377, 391. Plaintiff's physical examination was unremarkable, and his treadmill test normal. *Id.* at 378, 392.

The majority of Plaintiff's treatment occurred at the Southern Arizona Veterans Affairs Health Care System ("SAVAHCS"). On April 4, 2011, Plaintiff was seen by Licensed Nurse Practitioner ("LPN") Janet Haliburton for a routine check-up including obesity screening and diabetic foot exam. AR at 302–5. Plaintiff is a smoker and was counseled regarding preventative medicine. *Id.* at 304. Plaintiff also saw Adult Nurse Practitioner ("ANP") Randi Schmeling this same date. ANP Schmeling noted Plaintiff's history of stents, diabetes mellitus, hypertension, hyperlipidemia, benign prostatic hyperplasia, and that he used to see an oncologist regarding elevated white blood cells, but he has not seen one in two (2) years. *Id.* at 298. A review of Plaintiff's systems was unremarkable, and his current medications included glipizide, lisinopril/hydrochlorothyazide, metformin, metoprolol, simvastatin, and terazosin. *Id.* at 299. Plaintiff also reported that he "was put on [L]antus 10 units at bedtime" and takes Vitamin C, aspirin, and a multivitamin. *Id.* at 298–300. On April 27, 2011, Plaintiff was instructed on insulin injections and diet by Lordes L. Mulick, RN. AR at 292–94.

1
2
3
4
5
6
7
8
9

On May 3, 2011, Plaintiff was informed that his laboratory results were normal. *Id.* at 292, 302. On May 4, 2011, Nurse Mulick called Plaintiff to follow up regarding his blood sugar for Diabetes management. *Id.* at 288. Nurse Mulick also "[r]einforced teaching of low fat, low sugar, low carb diet and exercise. *Id.* On May 19, 2011, Nurse Mulick again called Plaintiff regarding his diabetes management and provided additional instruction regarding blood sugar checks and medication. *Id.* at 284. On May 25, 2011, Nurse Mulick called Plaintiff to instruct him to increase his Lantus dose. AR at 285.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On June 8, 2011, Plaintiff called and spoke with Nurse Mulick regarding his blood sugar readings. *Id.* at 283. On June 30, 2011, Nurse Mulick had a telephone consult with Plaintiff regarding his blood sugar readings. *Id.* at 281–82. On July 7, 2011, Nurse Mulick confirmed an increase in Plaintiff's Lantus dosage. *Id.* at 282. On July 21, 2011, Plaintiff was again seen by Dr. Ata at Pima Heart regarding his Coronary Artery Disease. *Id.* at 375–76, 389–90, 398–99. Pima Heart records indicate that Plaintiff had an angioplasty with stent placement in November 2009. *Id.* at 375, 398, 389. Plaintiff's physical examination was unremarkable. AR at 376, 390, 399. Dr. Ata made no changes to his current regimen. *Id.* On August 3, 2011, Nurse Mulick telephoned Plaintiff to follow up regarding his blood sugar readings. *Id.* at 275–76. On August 24, 2011, Plaintiff underwent a pulmonary function test. *Id.* at 221–22, 306–07. The report indicates that this was a "[n]ormal study without obstruction and restriction." *Id*. at 221, 306. The report further notes that "[t]here is significant [bronchodilator] response at the small airways level with mild evidence of air trapping on lung volumes." AR at 222, 307. On August 25, 2011, ANP Schmeling spoke with Plaintiff regarding his pulmonary

1
2
3
4
5

function test results, advising him that he "needs to quit smoking[.]" *Id.* at 274. Plaintiff declined a referral or medication, and ANP Schmeling indicated that Plaintiff would benefit from an inhaler, which he also declined. *Id.* On the same date, Nurse Mulick also followed up with Plaintiff regarding his blood sugar readings. *Id.* at 274–75.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

On November 2, 2011, Plaintiff was seen for an influenza shot. *Id.* at 267. On November 2, 2011, Plaintiff saw ANP Schmeling for a checkup. AR at 263. ANP Schmeling noted that Plaintiff was "doing well; no concerns." *Id.* ANP Schmeling's review of Plaintiff's systems was unremarkable except for a lesion on his left shoulder. *Id.* at 264. Aside from the prescriptions for checking his blood sugar levels and insulin, Plaintiff's medications remained unchanged from April 4, 2011. *Id.* Plaintiff indicated that he had stopped smoking approximately nine (9) days prior to the appointment. *Id.* at 263. On November 18, 2011, ANP Schmeling had a telephone consult with Plaintiff regarding nicotine patches. AR at 260. Plaintiff was offered a referral to psychology cessation classes, but declined. *Id.* On December 16, 2011, Plaintiff was seen by Daniel C. King, PA-C regarding his left shoulder lesion. *Id.* at 219, 256. A waist-up dermatological exam was performed. *Id.*

22
23
24
25
26
27
28

On January 5, 2012, Nurse Mulick contacted Plaintiff, reporting that his lab work was within normal limits with the exception of his triglycerides which were high. *Id.* at 253, 266. On March 15, 2012, Plaintiff was seen by ANP Schmeling for right hip pain for approximately three (3) weeks. AR at 248. Plaintiff reported that he bought special shoes, but they did not help. *Id.* Plaintiff quit the job. *Id.* Plaintiff indicated the pain was at the right top of the iliac crest and that he thought he might be developing

- 7 -

neuropathy in his feet. *Id.* Plaintiff reported that he was not taking any pain medications. *Id.* at 248. ANP Schmeling's physical examination indicated "tenderness right lumbar paraspinals about L3–5 [on palpation]; pain with flexion; sensation/strength intact . . . [bilaterally;] neg[ative] [straight leg raise.]" AR at 250. ANP Schmeling reported that Plaintiff's right hip had "tenderness at top of iliac crest; good [range of motion]; mild pain with internal rotation of hip in flexion." *Id.* ANP Schmeling ordered x-rays of Plaintiff's back and hip, discussed weight loss with Plaintiff and how it would help his Diabetes and back. *Id.* Plaintiff declined "nutrition or MOVE[,]" as well as ANP Schmeling's offer of physical therapy. *Id.* Plaintiff reported that over-the-counter ibuprofen works. *Id.* at 250. On March 19, 2012, Plaintiff had lumbosacral and hip x-rays taken. AR at 198–201. The radiology report indicates "[h]ypertrophic lumbar spondylosis . . . associated with advanced degenerative changes of the L4–L5 and L5–S1 discs, associated with facet arthropathy at the same levels." *Id.* at 198. The report further indicated "[m]ild D[egenerative] J[oint] D[isease] of both the S[acro]I[liac] joints is present." *Id.* Additionally, "[a]theromatous calcification of the infrarenal aorta are present with minimal A[bdominal] A[ortic] A[neurysm] formation." *Id.* The radiology impression reports "[n]o acute osseous or soft tissue pathology[;] . . . [d]egenerative changes lumbar spine[;] . . . [a]neurysmal dilatation infrarenal aorta[;] . . . [and] [p]ossible cyst, inferior pole left kidney." *Id.* at 199. The radiology report for Plaintiff's right hip indicates that "[b]ones joints and soft tissues are intact[,] [n]o lytic or blastic changes identified." *Id.* at 200. The report further indicates that "[t]here are moderate degenerative changes of the lower lumbar spine, sacroiliac and hip joints bilaterally[,]

[and] [a]theromatous vascular calcifications are seen within the soft tissues." AR at 200. On March 22, 2012, ANP Schmeling discussed x-rays and aneurysm with Plaintiff. *Id.* at 248. Plaintiff declined physical therapy and indicated he would get an ultrasound in six (6) months to follow the aneurysm. *Id.* On March 28, 2012, Plaintiff was seen by Marshall Palmer, OD for a diabetic teleretinal imaging consult. *Id.* at 246–47. These results were normal. *Id.* at 245.

On April 27, 2012, Plaintiff was seen by Shilpi Ratra, OD, overseen by Gregory S. Wolfe, OD, MPH, for a biennial Diabetes Mellitus vision examination. AR at 243–45. Plaintiff's vision examination was unremarkable. *See id.* On May 14, 2012, Plaintiff saw ANP Schmeling. *Id.* at 238–41, 363–66. ANP Schmeling's review of Plaintiff's system indicated that he was "doing well" and was otherwise unremarkable. *Id.* at 238–40, 363–65. ANP reported reviewing Plaintiff's medications, which remained unchanged, as well as his laboratory results, with Plaintiff. *Id.* at 240, 365. ANP Schmeling discussed weight control and offered nutrition and MOVE, which were again declined. AR at 240, 365. Kathleen Hutson, LPN completed a diabetic foot exam. *Id.* at 241, 366. Plaintiff's left foot had decreased sensation on the bottom of the foot, and his right foot had decreased sensation on top of toes, except for the little toe. *Id.* Plaintiff reported a dull ache in his lower back and hips for approximately three (3) months. *Id.* at 242, 367. Plaintiff reported his pain level as a four (4). *Id.* Plaintiff additionally reported that this pain was exacerbated with standing. AR at 242, 367. On May 30, 2012, Plaintiff had a telephone consult with Nurse Mulick regarding cough and congestion. *Id.* at 234–35, 359–60. Nurse Mulick also reviewed Plaintiff's blood sugar readings. *Id.* at 232–34,

1
2
3
4
5
6
7
8

358–59.  On May 31, 2012, ANP Schmeling examined Plaintiff regarding his cough and congestion.  *Id.* at 230–32, 355–57.  ANP Schmeling also spoke with Plaintiff regarding his chest x-ray.  *Id.* at 232, 357.  X-ray was negative for pneumonia, but there was a question between pneumonitis versus bronchitis.  AR at 197, 232, 318, 357.  "No significant active cardiopulmonary disease [was] identified."  *Id.* at 317.  ANP Schmeling prescribed a z-pack and a follow-up x-ray in six (6) weeks.  *Id.* at 232, 357.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

   On June 5, 2012, Plaintiff called complaining that his cough was not improved after the Z-pack.  *Id.* at 227–29, 352–354.  On June 6, 2012, Plaintiff saw Nurse Mulick regarding his chest congestion and cough.  *Id.* at 226–27, 351–52.  Plaintiff indicated that he had previously declined the use of inhaler, but is now willing to use one.  AR at 226, 351.  On June 12, 2012, Nurse Mulick had a telephone consult with Plaintiff regarding his blood sugar.  *Id.* at 347–348.  On June 13, 2012, Nurse Mulick had another telephone consult with Plaintiff regarding his cough.  *Id.* at 346–347.  Plaintiff reported using his inhaler when he feels shortness of breath and that the "inhaler helps really good."  *Id.* at 346.  On June 19, 2012, Nurse Mulick had a telephone consult with Plaintiff regarding his blood sugar and increased his Lantus.  *Id.* at 345.  Plaintiff denied any symptoms.  AR at 345.  On June 21, 2012, Plaintiff was notified that his follow-up chest x-ray was normal.  *Id.* at 344–45.  On June 29, 2012, Nurse Mulick followed up telephonically with Plaintiff regarding his blood sugar.  *Id.* at 343–44.

26
27
28

   On July 10, 2012, Plaintiff saw ANP Schmeling regarding his foot and left ankle pain.  *Id.* at 340–43.  Plaintiff reported "left ankle pain since June . . . [and] both feet hurt[.]"  *Id.* at 340.  Plaintiff further reported that his feet hurt when standing, and the

pain is worse in the morning.  AR at 340.  Plaintiff indicated he was not taking any pain medication.  *Id.*  On July 17, 2012, Plaintiff saw Steven M. Hoffman, DPM regarding his bilateral foot and ankle pain.  *Id.* at 337–40.  Plaintiff reported "that the pain comes and goes."  *Id.* at 337.  Plaintiff further "describe[d] the pain as some times his feet 'burn' and sometimes [it] feel[s] like they are 'freezing' and sometimes he gets 'pins and needles[.]'"  *Id.*  Plaintiff indicated that "he is not taking anything for his neuropathy but would like to talk to primary care about it."  AR at 337.  DPM Hoffman's review of Plaintiff's systems indicated "[n]o first step pain[,] . . . [Plaintiff] [d]enies pain on ambulation, hot/cold sensation[,] [and] . . . no pain, numbness, [or] tingling[.]"  *Id.*  DPM Hoffman's physical examination was unremarkable.  *Id.* at 338.  X-rays of Plaintiff's feet showed "mild degenerative finding the first and second M[etatarsophalangeal] joints[,] [m]arginal erosion in the great toe metatarsal head medially could be degenerative in nature although the differential would include gout[,] [and] [t]here are small calcaneal enthesophytes."  *Id.* at 315–16, 338.  Regarding these findings, the report indicates "[m]ild degenerative findings[;] [t]here is [a] small erosion in the great toe metatarsal head[;] [c]orrelate clinically in regards to any evidence for gout."  *Id.* at 315–16,328–29, 338.  Plaintiff's left ankle showed "[s]eparate ossification and spurring about the tip [of] the medial malleolus are likely the sequela of old trauma[;] [a]nkle mortise is symmetric and the joint space preserved[;] [t]here is mild spurring off the distal tibia anteriorly and posteriorly[;] [p]unctate metallic density overlies Kager's fat pad on the lateral radiograph."  AR at 314, 329, 338–39.  As such, there were "[m]ild degenerative findings."  *Id.* at 314, 329, 339.  Plaintiff's right ankle showed "[a]nkle mortis is symmetric and the joint space

- 11 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

preserved[,] [t]here is minimal spurring off the tip of the medial malleolus[,] [and] [t]here is a plantar calcaneal enthesophyte." *Id.* at 313, 330, 339. Plaintiff was given orthotics and the x-ray findings, proper foot care, and proper shoe gear were discussed. *Id.* at 330, 339. On July 19, 2012, Plaintiff saw Dr. Ata for a follow-up. *Id.* at 372–74, 386–88. Plaintiff reported chest pain that remained for a half day and resolved with three (3) Aspirin. AR at 372, 386. Plaintiff also reported not exercising much. *Id.* Plaintiff's physical examination was otherwise unremarkable. *Id.* at 373, 387. On July 27, 2012, Nurse Mulick had a telephone consult with Plaintiff regarding his blood glucose readings. *Id.* at 335–36. Plaintiff's morning insulin was increased. *Id.* at 336.

On August 2, 2012, Plaintiff underwent a Myocardial Perfusion Imaging ("MPI") study. AR at 384–85, 395–97. Dr. Ata reported a "[n]ormal myocardial perfusion scan." *Id.* at 384, 395, 397. On September 6, 2012, Plaintiff underwent an ultrasound to follow-up regarding his infrarenal aneurysm. *Id.* at 312. No abdominal aortic aneurysm was noted. *Id.*

On November 5, 2012, ANP Schmeling had a telephone consult with Plaintiff regarding his lab work. *Id.* at 331–33. On November 6, 2012, ANP Schmeling informed Plaintiff that his ultrasound was "negative for an aneurysm." AR at 334. On November 20, 2012, Plaintiff received a flu shot and discussed insulin injections with Nurse Mulick. *Id.* at 468–69. On November 26, 2012, Plaintiff called regarding high blood sugar which he was unable to control. *Id.* at 465–66. Nurse Mulick followed regarding his blood sugar the same day. *Id.* at 464–65. On December 7, 2012, Nurse Mulick had a telephone consultation with Plaintiff regarding his blood sugar. *Id.* at 461–63. On December 13,

2012, Nurse Mulick again followed-up telephonically regarding Plaintiff's blood sugar readings.  AR at 460–61.  On December 20, 2012, Nurse Mulick had another telephone consult with Plaintiff regarding his blood sugar, and increased his insulin.  *Id.* at 459–60.

On January 24, 2013, Nurse Mulick consulted with Plaintiff regarding his blood sugar and reviewed his diet.  *Id.* at 451–52.  On February 14, 2013, Nurse Mulick reviewed Plaintiff's blood sugar and reinforced the need to monitor his diet closely.  *Id.* at 450–51.  On February 19, 2013, Plaintiff underwent a Diabetic Teleretinal Reader Consult, which was unremarkable.  *Id.* at 446–48.  On February 21, 2013, Nurse Mulick consulted with Patient regarding his blood sugar.  AR at 446.  On February 28, 2013, Plaintiff saw ANP Schmeling stating that he "does not know why he is here; says 'someone' made this appt for him."  *Id.* at 441.  ANP Schmeling indicated that Plaintiff had "gained a significant amt of weight since last visit."  *Id.*  ANP Schmeling assessed poorly controlled type II diabetes mellitus, right shoulder tendonitis, and obesity.  *Id.* at 443.  ANP Schmeling's treatment plan included over-the-counter nonsteroidal anti-inflammatory drugs (NSAIDs) and range of motion exercises for Plaintiff's shoulder.  *Id.* ANP Schmeling also discussed physical therapy so that Plaintiff could learn core strengthening exercises, but Plaintiff declined.  AR at 443.  Additionally, ANP Schmeling reviewed Plaintiff's diet and gave suggestions regarding the same.  *Id.*

On March 1, 2013, Nurse Mulick consulted with Plaintiff regarding his blood sugar.  *Id.* at 440.  On March 8, 2013, Nurse Mulick again consulted with Plaintiff regarding his blood sugar readings, which showed improvement.  *Id.* at 339.  On March 18, 2013, Nurse Mulick followed-up with Plaintiff regarding his blood sugar.  *Id.* at 438–

39.  Plaintiff reported that "he continue[d] to closely monitor his diet and continue[d] to be active and regular exercise."  AR at 438.  On March 28, 2013, Plaintiff "attended a group enrollment class for the Home Telehealth (HT) Diabetes Program.  *Id.* at 437. Plaintiff also enrolled in the Care Coordination Home Telehealth ("CCHT") program for his diabetes. *See id.* at 427–436.

## II.    STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'"  *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).  Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."  *Tackett*, 180 F.3d at 1098 (citing *Matney v.*

1
2
3
4
5
6
7

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).  Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted).

8
9

**III.    ANALYSIS**

10

*A.    The Five-Step Evaluation*

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  This process is defined as follows:  Step one asks is the claimant "doing substantial gainful activity[?]"  If yes, the claimant is not disabled; step two considers if the claimant has a "severe medically determinable physical or mental impairment[.]"  If not, the claimant is not disabled; step three determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.  If not, the claimant is not disabled; step four considers the claimant's residual functional capacity and past relevant work.  If claimant can still do past relevant work, then he or she is not disabled; step five assesses the claimant's residual functional capacity, age, education, and work experience.  If it is determined that the claimant can make an adjustment to other work, then he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

27
28

In the instant case, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016, and was not engaged in substantial

gainful activity since her alleged onset date of December 31, 2010.  AR at 21.  At step two of the sequential evaluation, the ALJ found that "the claimant has the following medically determinable impairments: degenerative disc disease, diabetes mellitus and mild degenerative changes of the feet (20 CFR 404.1521 *et seq.*)."  *Id.*  The ALJ further found that "[t]he claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*)." *Id.*  Accordingly, the ALJ found that "[t]he claimant was not under a disability, as defined in the Social Security Act, from December 31, 2010, through December 31, 2009, the date last insured (20 CFR 404.1520(g))."  *Id.* at 24.

Plaintiff asserts that his DIB claim should not have been denied at Step Two, because "an ALJ may find that a claimant lacks severe impairments *only* when that conclusion is *clearly* established by the medical evidence.  Pl.'s Opening Br. (Doc. 15) at 4 (citing *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)) (emphasis in original).

### B.  Step Two Non-Severity Finding

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  The claimant bears the burden to show medical evidence consisting of signs, symptoms, and laboratory findings to establish a medically determinable physical

1
2
3
4

or mental impairment.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); 20 C.F.R. §§ 404.1512, 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54, 107 S.Ct. 2287, 2297-98, 96 L.Ed.2d 119 (1987)).  "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290 (emphasis added)).  "[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)) (alterations in original).  Moreover, "[t]he ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

24
25
26
27
28

Here, the ALJ stated that "[i]n reaching the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits his ability to perform basic work activities, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted [sic] as consistent with the

- 17 -

objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." AR at 22. Plaintiff's medical records demonstrate that his Diabetes Mellitus was not well controlled for a period of greater than twelve (12) months. Moreover, the medical records document objective medical findings related to Plaintiff's foot, back, and hip pain. Thus, unlike *Ukolov v. Barnhart*, the medical records are not devoid of objective evidence of impairment. 420 F.3d 1002 (9th Cir. 2005). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (citing S.S.R. 85-28). "The ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [Plaintiff's] claim was 'groundless.'" *Webb*, 433 F.3d at 688 (citing *Smolen*, 80 F.3d at 1290). As such, the ALJ's dismissal at Step Two was in error, and such error was not harmless.

**IV.   CONCLUSION**

In light of the foregoing, the Court REVERSES the ALJ's decision and the case is REMANDED for further proceedings consistent with this decision, including additional hearing testimony, if necessary.

Accordingly, IT IS HEREBY ORDERED that:

1)     Plaintiff's Brief—Social Security ("Opening Brief") (Doc. 15) is GRANTED;

1       2)      The Commissioner's decision is REVERSED and REMANDED; and

2

3       3)      The Clerk of the Court shall enter judgment, and close its file in this matter.

4

5     Dated this 30th day of March, 2016.

6

7

8                Honorable Bruce G. Macdonald
                   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28